# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sonya Edmonds, :
             Appellant :
              :
          v. : Nos. 742, 764 C.D. 2017
              : Argued: March 8, 2018
Corizon Health, Inc. and :
City of Philadelphia :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                FILED: March 28, 2018


Sonya Edmonds (Edmonds) appeals the orders of the Court of Common Pleas of Philadelphia County (trial court) granting Corizon Health, Inc. (Corizon) and the City of Philadelphia's (City) unanswered motions for summary judgment pursuant to Pennsylvania Rule of Civil Procedure No. 1035.3(d).[1]

---

[1] Pa.R.C.P. No. 1035.3 provides, in pertinent part:

> (a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion .
> . . .
>
>                    * * *

**(Footnote continued on next page…)**

**I.**

Corizon is a private corporation that provides healthcare within the Philadelphia Prison System (PPS). The City has final decision-making authority as to who can enter the PPS facilities, and Corizon employees must obtain a security clearance from the City as a condition to their employment.

On June 2, 2014, Corizon made an offer to hire Edmonds as a Registered Nurse (RN) in the PPS, contingent upon her successful completion of pre-hire background checks as well as obtaining a security clearance from the City. However, because the City did not grant Edmonds a security clearance due to a prior arrest and criminal charges, Corizon subsequently rescinded its offer of employment.

On July 8, 2015, Edmonds filed a complaint against Corizon and the City, later amended. In her amended complaint, Edmonds averred that she was arrested as a juvenile over 30 years ago, that the charges were eventually dismissed, and that her juvenile record was expunged. Despite her history, "[f]rom 1998 to 2004, Ms. Edmonds had worked for Corizon under its former name, Prison Health Services, Inc., and was assigned to a worksite within the [PPS]. During that time, she satisfactorily performed the duties of her job." (Reproduced Record (R.R.) at 81a.)

_____

**(continued…)**

> (d) Summary judgment may be entered against a party who does not respond.

2

Given her prior satisfactory employment with the PPS, Edmonds contends that Corizon violated Section 9125 of the Criminal History Record Information Act (CHRIA)[2] when denying her employment based on her expunged criminal record. She did not assert any violation of CHRIA by the City.

Edmonds further asserts that Corizon and the City (by "aid[ing] and abet[ing]" Corizon) violated Sections 5(a) and (e) of the Pennsylvania Human Relations Act (PHRA)[3] because "[s]tatistics show African-Americans are arrested

---

[2] Section 9125 of CHRIA, 18 Pa.C.S. §9125, provides, in relevant part:

> (a) General rule.--Whenever an employer is in receipt of information which is part of an employment applicant's criminal history record information file, it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section.

> (b) Use of information.--Felony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied.

[3] Section 5(a) of PHRA states that it shall be unlawful:

> (a) For any employer because of the race …, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required. . . .

Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a). Section 5(e) of PHRA states that it shall be unlawful:

**(Footnote continued on next page…)**

in numbers disproportionate to their representation in the general population." (*Id.* at 83a, 86a.) "Studies also show that person[s] who have not had a criminal history within seven (7) years have low recidivism rates and are as likely to be charged as a person with no criminal history. These studies support a finding that criminal record exclusions have a disparate impact based on race." (*Id.* at 83a.)

Edmonds also alleges that Corizon violated Article I, Sections 1 and 26 of the Pennsylvania Constitution.[4]

---

**(continued…)**

> For any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(e).

[4] Article I, Section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1. Article I, Section 26 of the Pennsylvania Constitution provides:

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

Pa. Const. art. I, § 26.

On September 6, 2016, Corizon and the City filed separate motions for summary judgment, and Edmonds responded that she had not had the opportunity to take discovery. The trial court denied those motions without prejudice, granting Edmonds' request for more time to complete discovery.

After discovery was completed, Corizon and the City filed renewed motions for summary judgment along with supporting evidence. Corizon contended that Edmonds failed to support her constitutional claim with evidence that Corizon was a state actor. With regard to Edmonds' PHRA claim, Corizon argued that Edmonds offered no evidence that its employment practices had a disparate impact on African-American employees. Finally, Corizon argued that it was entitled to summary judgment on Edmonds' CHRIA claim because she presented no evidence that Corizon possessed her criminal history record information or terminated her employment based on that information.

The City's motion for summary judgment asserted that Edmonds' "aiding and abetting" claim against the City under PHRA failed as a matter of law because the City was not Edmonds' employer. Moreover, Edmonds presented no evidence that the City participated in Corizon's alleged discriminatory intent or that Corizon was liable for a discriminatory practice.

In support of its summary judgment motion, Corizon submitted a declaration of Amina Calland (Calland), the company's human resources officer. She stated that Corizon is an "equal opportunity employer" that maintains a "company-wide policy" prohibiting racial discrimination. (R.R. at 252a.) Due to

5

the "obvious security concerns," every Corizon employee must obtain, *inter alia*, security clearance from the City to work at a correctional facility, and Corizon is unable "to override the decision of [the City] with respect to a security restriction." (R.R. at 252-53a.) Edmonds knew of that policy.

Calland stated that on June 19, 2014, she received an email from Eileen McGinnis (McGinnis), a correctional officer at the PPS. Without giving an explanation, McGinnis stated that "Deputy Commissioner Gainey did not approve [] Edmonds' security clearance." (R.R. at 254a.) Calland encouraged Edmonds to contact McGinnis "to see if the issue could be resolved." (*Id*.) On June 24, 2014, Edmonds told Calland that she had contacted McGinnis. Calland then emailed McGinnis asking "whether the issue of [] Edmonds' security clearance was open for discussion." (*Id*.) McGinnis replied that Edmonds had submitted all of the requested paperwork, but her clearance was still denied. Based on that information, Calland informed Edmonds that her conditional offer was rescinded. "Corizon has always rescinded offers of employment in cases where applicants are denied a security clearance by the City of Philadelphia. Corizon has never made an exception to this practice." (*Id.* at 255a.)

Calland stated that Corizon later hired Victor Kak, an African-American, to fill the position "that [] Edmonds would have been hired into if she had [been] granted a security clearance." (R.R. at 255a.) Calland further stated that at the time Edmonds applied for employment in May 2014, Corizon employed 104 registered nurses; 13 are Asian, 45 are African-American, and 46 are

6

Caucasian. A copy of the company policies and email correspondence were also submitted into the record.

Because Edmonds did not respond to either motion, the trial court granted both motions for summary judgment as uncontested and dismissed Edmonds' complaint. As the trial court reasoned:

> This Court granted the twin motions for summary judgment because they were uncontested. [Edmonds] completely failed to raise an issue of material fact for a determination by a fact-finding body. In the absence of a coherent legal argument explaining why this matter should proceed to trial, this Court granted summary judgment and disposed of the above-captioned case.
>
> * * *
>
> Pennsylvania Rule of Civil Procedure 1035.3(d) specifically permits the entry of summary judgment against a party who fails to file a response to a motion for summary judgment.

(R.R. at 424a.) Edmonds filed timely appeals from those orders to the Superior Court, which were then transferred to this Court.[5]

---

[5] On April 20, 2017, Edmonds filed requests for reconsideration of the February 15, 2017 orders, which the trial court denied. Edmonds then appealed the denial regarding the City to this Court, which we quashed because it was untimely and an order denying reconsideration is not an appealable order. *See Edmonds v. Corizon Health, Inc.*, (Pa. Cmwlth., 599 C.D. 2017, filed June 15, 2017).

## II.

On appeal, Edmonds contends that the trial court erred in granting what is essentially a default judgment against her on the basis that she failed to file a timely response to Corizon and the City's motions for summary judgment because, on the merits, there are outstanding unresolved issues of material fact.

### A.

Pennsylvania Rule of Civil Procedure No. 1035.2 provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

The non-moving party may not rest upon the mere allegations or denials of the pleadings but must file a response within 30 days after service of the motion for summary judgment, identifying:

> (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of

8

> the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or
>
> (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.C.P. No. 1035.3(a). Rule 1035.3(d) further provides that "[s]ummary judgment may be entered against a party who does not respond." Pa.R.C.P. No. 1035.3(d).

Rule 1035.3 imposes upon the non-moving party "a clear duty to respond to a motion for summary judgment." *Harber Philadelphia Center City Office v. LPCI Limited Partnership*, 764 A.2d 1100, 1104 (Pa. Super. 2000). If the non-moving party does not respond, the trial court may grant summary judgment. Pa.R.C.P. No. 1035.3(d). However, just because a motion for summary judgment is uncontested does not mean that the trial court has authority to enter a **default** judgment, regardless of the underlying merits of that motion. As we have explained:

> Philadelphia County Local Rule of Civil Procedure 1035.2(a) provides that "the adverse party . . . must file a response to the motion for summary judgment" that
>
> > shall be divided into paragraphs, numbered consecutively, corresponding to the numbered paragraphs of the motion for summary judgment. The response shall state whether each of the allegation [sic] is admitted or denied. No general denial is acceptable. The factual reasons for the denial or dispute must be specifically stated and the "record," (as that term is defined in Pa.R.C.P.

9

> No. 1035.1) supporting the denial or dispute must be attached as an exhibit.

> Phila. R.C.P. No. 1035.2(a)(4). Failure to comply with applicable rules for responding to a summary judgment motion can constitute a basis for concluding that there is no genuine dispute of material fact and for granting summary judgment against the non-compliant party. *See* Pa.R.C.P. No. 1035.3(d) (providing that "[s]ummary judgment may be entered against a party who does not respond" to the motion); [*Harber*, 764 A.2d at 1104-05]. Accordingly, where a summary judgment motion subject to Philadelphia Local Rule 1035.2(a) clearly identifies paragraphs as setting forth the facts that it claims are undisputed, **a trial court may properly apply Philadelphia Local Rule 1035.2(a)(4) to hold that the adverse party's failure to specifically respond to those paragraphs constitutes an admission that the facts set forth by those paragraphs are undisputed**.

*Evans v. Thomas Jefferson University*, 81 A.3d 1062, 1069 (Pa. Cmwlth. 2013) (emphasis added). A non-moving party's failure to file a response also waives all defenses and grounds for relief on appeal. *Harber*, 764 A.2d at 1105.

**B.**

On appeal, it is clear that the trial court issued the equivalent of a default judgment in reaction to Edmonds' failure to timely answer Corizon's and the City's motions for summary judgment. Notwithstanding, because we may affirm on any grounds that have been raised below, we will review whether the trial court could properly grant summary judgment based upon the factual averments contained in Corizon's and the City's motions.

## C.

Reaching the underlying merits of this appeal, Edmonds first contends that the trial court erred in granting summary judgment in favor of Corizon because questions of material fact still exist as to whether Corizon is a state actor. However, even assuming Corizon is a state actor, any right to relief is entirely dependent on establishing that unlawful discriminatory conduct took place.

Edmonds contends that the trial court erred in granting summary judgment in favor of Corizon and the City as it relates to her claim of disparate impact under the PHRA.[6]  However, Edmonds has entirely failed to provide any statistical evidence demonstrating a significantly discriminatory hiring pattern by Corizon and/or the City.  In fact, all evidence proffered in Corizon's and the City's motions for summary judgment points to the contrary that the City's practices regarding granting security clearances had a disparate impact.  When Edmonds applied for employment in May 2014, out of the 104 registered nurses employed by Corizon, 13 were Asian, 45 were African-American, and 46 were Caucasian.  In

---

[6] The United States Supreme Court in *Connecticut v. Teal*, 457 U.S. 440 (1982), held that it is not necessary to prove that a specific practice had a "racial purpose or invidious intent;" a practice can be "invalid because [it] had a disparate impact." *Id.* at 446 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)); *see also Girard Finance Co. v. Pennsylvania Human Relations Commission*, 52 A.3d 523 (Pa. Cmwlth. 2012).  A plaintiff establishes a *prima facie* case for disparate impact by "demonstrat[ing] that application of a facially neutral standard has caused a 'significantly discriminatory hiring pattern.'" *Newark Branch, NAACP v. City of Bayonne, N.J.*, 134 F.3d 113, 121 (3d Cir.1998) (quoting *Newark Branch, NAACP v. Town of Harrison, N.J.*, 940 F.2d 792, 798 (3d Cir.1991)).  This *prima facie* showing requires the plaintiff to prove a significant statistical disparity and to "demonstrate that the disparity [she] complain[s] of is the result of one or more of the employment practices that [she is] attacking." *City of Bayonne*, 134 F.3d at 121 (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657 (1989)).

addition, when Corizon rescinded its conditional offer of employment because Edmonds failed to obtain security clearance, it subsequently "hired Victor Kak, who is African-American, to fill the RN position that Ms. Edmonds would have been hired into if she had be[en] granted a security clearance." (R.R. at 202a.)

Edmonds next contends that the trial court erred in granting summary judgment in favor of Corizon for alleged CHRIA violations. Edmonds' complaint does not contend that Corizon's conduct violated CHRIA.

Contrary to Edmonds' assertions, the uncontested factual averments in Corizon's motion for summary judgment as well as other evidence attached thereto demonstrate that it did not violate CHRIA. The offered evidence and uncontested factual averments by Corizon repeatedly demonstrate that "Corizon did not complete a criminal background check on Ms. Edmonds and never received any criminal record history related to Ms. Edmonds from any entity." (R.R. at 204a) (emphasis added). Obviously, because Corizon did not consider Edmonds' criminal history record when rescinding its offer to employ her, it could not have violated CHRIA.

Accordingly, for the foregoing reasons, we affirm the trial court's orders granting Corizon's and the City's separate motions for summary judgment.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sonya Edmonds,                    :
            Appellant          :
                                   :
            v.               :  Nos. 742, 764 C.D. 2017
                                   :
Corizon Health, Inc. and     :
City of Philadelphia       :

## **O R D E R**

AND NOW, this 28th day of March, 2018, it is hereby ordered that the orders of the Court of Common Pleas of Philadelphia County in the above-captioned matters are affirmed.

_____
DAN PELLEGRINI, Senior Judge